Lee S. RUMSEY, Douglas DiGerlando, Michael Rhodes and Thomas Graves, individually and as representatives of a class of persons similarly situated, Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES and Thomas Coughlin III, as Commissioner of the New York State Department of Correctional Services, Defendants.

No. 82–CV–979.

United States District Court, N.D. New York.

June 28, 1983.

Rowley, Forrest & O'Donnell, P.C., Albany, N.Y., for plaintiffs; Thomas J. Forrest, Mark T. Walsh, Jr., Albany, N.Y., of counsel.

Robert Abrams, Atty. Gen., Albany, N.Y., for defendants; Susan S. Boochever, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION & ORDER

MINER, District Judge.

### I

Plaintiffs, all employees of the New York State Department of Correctional Services and members of the New York State National Guard or other reserve units of the United States Armed Forces, have brought this action on behalf of themselves and all others similarly situated, claiming that their rights under 38 U.S.C. §§ 2021(b)(3) and 2024(d) have been violated by a policy of defendants. Specifically, plaintiffs claim that Departmental Directive # 2212, which requires that "when practicable and consistent with the [Department of Correctional Services] personnel requirements, regular days off and shift assignments may be revised to avoid military drills during scheduled working hours," is unlawful. Plaintiffs also claim that this policy violates their rights under § 242 of the New York State Military Law and to equal protection under the fourteenth amendment of the United States Constitution. Jurisdiction is predicated upon 42 U.S.C. § 1983, 28 U.S.C. § 1343, 38 U.S.C. § 2022 and the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

By Order dated October 12, 1982, plaintiffs' motions for preliminary injunction and class certification were denied. However, the action was certified as a class action based on stipulations, signed by the parties on February 10, 1983 and February

25, 1983 and approved by the Court by Order dated February 28, 1983. Before this Court presently are plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment. Fed.R. Civ.P. 56.

## II

Plaintiffs are approximately 520 correction officers, sergeants and lieutenants employed by the New York State Department of Correctional Services who are also members of reserve components of the armed forces. The exclusive bargaining representative for plaintiffs is the New York State Inspection, Security and Law Enforcement Employees, District Council 82, AFSCME, AFL–CIO. Council 82 and the State have negotiated collective bargaining agreements which set forth the terms and conditions of plaintiffs' employment with the Department of Correctional Services (hereinafter "Department"). (Affidavit of John W. Burke, sworn to September 15, 1982, ¶¶ 5 and 6, Exs. A and B; hereinafter "Burke Affidavit").

Pursuant to those collective bargaining agreements, plaintiffs have enjoyed certain rights, benefits, privileges and incidents of their employment including those granted by reason of plaintiffs' seniority. Specifically, section 24.2 of collective bargaining agreements dating back to April 1, 1970 have provided that "[s]eniority shall be the basis by which employees shall select pass days." (Burke Affidavit, ¶ 7; Affidavit of Hollis V. Chase, sworn to March 15, 1983; hereinafter "Chase Affidavit").

Plaintiffs maintain that prior to certification and recognition of Council 82 as the collective bargaining representative for the plaintiffs, and hence before the first collective bargaining agreement between Council 82 and the State, the terms, conditions and incidents of employment were dictated by the employer. (Chase Affidavit, ¶ 4). Thus, the jobs, shifts and days worked were assigned by the employer, and the employer dictated exactly what jobs, shifts and pass days an employee obtained. (Chase Affidavit, ¶ 5). Therefore, plaintiffs further maintain, a primary objective of collective bargaining on behalf of the employees was to implement a system whereby the choice of jobs, shifts and days off would be with the employees in a manner equitable to all employees. (Chase Affidavit, ¶ 8). The system negotiated and agreed to, through which pass days have been chosen, was a seniority system. (Collective Bargaining Agreement, § 24.2; Chase Affidavit, ¶ 10).

Employees select pass days and job shifts, plaintiffs contend, in one package based on seniority. Each employee has the right to select Saturday or Sunday pass days, or any other one of several other pass day schedules available to the employee, when he bids on a particular job and shift assignment. Under this system, a pass day schedule bid through a job is firm as long as that employee elects to retain the job bid. An employee, for example, contemplating whether or not to bid a particular job and shift, can ascertain in advance exactly what his pass day schedule will be. (Chase Affidavit, ¶ 9). Thus, it appears that particular pass day schedules are chosen on the basis of seniority when particular job shifts are bid for.

Defendants, on the other hand, contend that, despite language in the Collective Bargaining Agreement to the contrary, *only* job and shift assignments are awarded on the basis of seniority. (Affidavit of Sal Lafata, sworn to September 28, 1982). Each job shift assignment carries with it, or has assigned to it, a rotating schedule of days off. Therefore, defendants maintain, there does not exist a separate bidding for days off. The employee simply takes the days off that come with the bidded job.

On March 30, 1982 defendants put into effect Directive # 2212. Pursuant to section III B.3 of the Directive:

The Department Lieutenant/Attendance Control Office will review the quarterly training schedules and extra ordered military duty so that, when practicable and consistent with the Department's personnel requirements, regular days off and shift assignments may be revised to avoid

military drills during scheduled working hours.

Thus, under Directive # 2212 § III B.3, when there is a conflict between an employee's work schedule and scheduled military drills, supervisors, where possible, may revise the employee's regular days-off schedule so that his or her military leave falls on the regular days off.[1]

Plaintiffs allege that the Directive "singles them out" because of their military obligation. Correction officers, sergeants and lieutenants who apply for leave, other than military leave, such as vacation, personal leave, personal illness leave and jury duty are claimed not to be required to shift or change their pass days to days when such leave is requested. Plaintiffs thus contend that the Directive is discriminatory and violates 38 U.S.C. §§ 2021 *et seq.,* New York Military Law § 242 and the Equal Protection Clause of the United States Constitution.

### III

Section 2021(b)(3) of Title 38 U.S.C. provides in pertinent part:

Any person who [is employed by a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

The Senate Report on the bill that became § 2021(b)(3) stated that the purpose of the enactment was "to prevent reservists and National Guardsmen not on active duty who must attend weekend drills or summer training from being discriminated against in employment because of their Reserve membership ...." S.Rep. No. 1477, 90th Cong., 2d Sess., 1–2 (1968), U.S.Code Cong. & Admin.News, p. 3421. Similarly, the House Report announced that the bill was designed to provide "job protection for employees with obligations as members of a reserve component. It assures that these reservists will be entitled to the same treatment afforded their coworkers without such military obligation." H.R.Rep. No. 1303, 90th Cong., 2d Sess., 3 (1966).

However, in *Monroe v. Standard Oil Co.,* 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), the most authoritative precedent in this area, the Court noted that although § 2021(b)(3) was "enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion motivated solely by reserve status," 452 U.S. at 559, 101 S.Ct. at 2516, it does not "require work-assignment preferences not available to any nonreservist employee," 452 U.S. at 561, 101 S.Ct. at 2517. Indeed, "there is nothing in the legislative history that would indicate Congress intended that reservists were to be entitled to all 'incidents and advantages of employment' accorded during their absence to working employees, including regular time and overtime pay. [footnote omitted]." 452 U.S. at 563, 101 S.Ct. at 2518. Thus, *Monroe* makes it clear that § 2021(b)(3) does not require that the employer treat the employee-reservist in every single respect as if the reservist's military obligation did not exist, even to the point of arranging "special accommodations." All the statute is designed to accomplish is to prevent discharge, denial of promotional opportunities or "discrimina[tion] against [the reservist] vis-a-vis other employees in the scheduling of work" or in the denial of other major incidents of employment. 452 U.S. at 560, 561, 101 S.Ct. at 2516, 2517.

It is clear, then, that if the employees at bar bid on specific days off as a prerequisite

---

**1.** Defendants allege that the Directive was promulgated after an investigation revealed that employees were abusing military leave by failing to report for military drills, leaving early from military drills without notifying correction officials, and submitting false orders authorizing military leave. (Affidavit of Kevin Breen, sworn to September 28, 1982). Defendants further allege that the greatly expanded growth of the inmate population has resulted in an unprecedented need for new physical space and an increased staff. The Directive was designed, in part, to alleviate, at critical times, the shortage of correctional personnel. (Affidavit of William Gard, sworn to September 28, 1982; Affidavit of Thomas A. Coughlin III, sworn to June 20, 1982).

of seniority, in other words, as a contractual incident of employment,[2] discrimination against employee-reservists by rescheduling their pass days to coincide with military leave would violate § 2021(b)(3). (*See* U.S. Department of Labor Ruling, Gilman v. Iowa State Penitentiary, case No. 62–7019 (36), Defendants' Memorandum of Law in Support of Motion for Summary Judgment, Ex. 1). However, it is not clear here whether, as plaintiffs argue, section 24.2 of the Collective Bargaining Agreement provides for fixed pass days that cannot be changed after employees have bid for same, or whether, as defendants argue, pass day patterns are bid with job and shift assignments as a package. In other words, there exists a material issue of fact as to whether employees do indeed select pass days on the basis of seniority.[3]

However, whether the pass days are fixed or not is not of critical importance. Article 15.3 of the Collective Bargaining Agreement allows the Department to change an employee's shift schedule to accommodate legitimate Department needs. Moreover, Civil Service Attendance Rules provide that the Department has the right "to insure maintenance of services." (Affidavit of Kevin Breen, sworn to September 29, 1982; Affidavit of John J. Cassidy,

sworn to March 24, 1983). More importantly, the uncontroverted evidence presented is that pass days are routinely rescheduled for other purposes such as jury duty, training and labor management purposes.[4] (Cassidy Affidavit, ¶ 10; Findings of Hearing Officer at Step 3 Grievance Procedure, Reply Affidavit of Susan S. Boochever, sworn to March 25, 1983, Ex. 1). Therefore, to hold here that § 2021(b)(3) has been violated, even taking as true plaintiffs' position that pass days are selected on the basis of seniority, would be to require the State to provide for "special accommodations" for employee-reservists, a requirement that would contravene the holding of *Monroe*.[5] (*See* Opinion of U.S. Department of Defense, dated November 15, 1982, Defendants' Memorandum of Law in support of Motion for Summary Judgment, Ex. 2).

## IV

Accordingly, plaintiffs' motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted in its entirety.

It is so Ordered.

---

**2.** *See Franks v. Bowman,* 424 U.S. 747, 766–767, 96 S.Ct. 1251, 1265, 47 L.Ed.2d 444 (1976) (vacations, days off and promotions, scheduled according to seniority, considered important incidents of employment); *see also Humphrey v. Moore,* 375 U.S. 335, 346–47, 84 S.Ct. 363, 370, 11 L.Ed.2d 370 (1964) ("competitive status" seniority plays "critical" role in modern employment systems).

**3.** Thus, there also exists a question as to the appropriate construction of § 24.2.

**4.** Fed.R.Civ.P. 56(e) provides that, when a motion for summary judgment is supported by the evidentiary material listed in Rule 56(c), an adverse party may not rest his opposition upon the pleadings or upon mere conclusory allegations or denials. *See, e.g., Appelgate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970). Therefore, the party opposing summary judgment must set forth particular evidentiary matters which disclose the presence of genuine issues of material facts. *Nifty Food Corp. v. The Great Atlantic & Pacific Tea Co., Inc.,* 614 F.2d 832, 839 (2d Cir.1980). Here, outside of

allegations predicated on the pleadings, plaintiffs have not controverted defendants' proffered evidence that pass days are routinely rescheduled for purposes other than reserve military leave.

**5.** Since there exists no discrimination here, New York Military Law § 242, New York's analogue to 38 U.S.C. § 2021(b)(3), has not been violated. *Williams v. Walsh,* 289 N.Y. 1, 43 N.E.2d 498 (1942). Correspondingly, there has been no violation of equal protection. Moreover, there is no real dispute that defendants have complied with all relevant requirements of 38 U.S.C. § 2024(d). This section compels employers to grant leaves of absence to employees who must attend reserve training, and entitles a reservist who has been absent for such training to benefits upon his return. *Monroe v. Standard Oil Co., supra,* 452 U.S. at 553 n. 7, 101 S.Ct. at 2513 n. 7. *See Aiello v. Detroit Free Press, Inc.,* 570 F.2d 145, 148 (6th Cir.1978).