Richard R. ROMANO, Plaintiff,

v.

THUNDER PROJECTS, INC.,
Defendant.

No. 87–CV–1394.

United States District Court,
N.D. New York.

Sept. 27, 1988.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Syracuse, for plaintiff; William F. Larkin, of counsel.

Levene, Gouldin & Thompson, Binghamton, N.Y., for defendant; Donald R. Gitto, of counsel.

## MEMORANDUM–DECISION AND ORDER

McAVOY, District Judge.

### INTRODUCTION

Plaintiff, a Command Sergeant Major in the Army Reserves, commenced this action under 38 U.S.C. section 2022 (Supp. 1988), after being terminated from his employment, on September 8, 1986, as a full-time permanent managerial employee with defendant, alleging a violation of provisions protecting employment rights of reservists who are called to Active Duty Training (ADT). Relying on 38 U.S.C. sections 2021(b)(3) (Supp.1988) and 2024(d) (1979), plaintiff claims that defendant had denied

him an incident or advantage of his employment because of his Army Reserve obligation or had placed him in a lesser position than he had been in prior to fulfilling that obligation by failing to pay plaintiff for a week's vacation in August 1986 in addition to the two weeks' vacation pay he had received while away from work in July 1986 to attend ADT. In essence, plaintiff contends that he understood the terms and conditions of his employment to entitle him to two weeks' paid vacation *and* to two weeks paid leave and that his former employer violated his statutory rights by, in effect, failing to pay plaintiff for the time spent at ADT.

Issue has been joined, and defendant now moves, prior to responding to plaintiff's discovery requests, for summary judgment dismissing the complaint. Defendant contends that a February 4, 1988 New York State Department of Labor decision, which sustained an initial decision holding plaintiff entitled to unemployment benefits, should be accorded collateral estoppel effect and that on the basis of the collateral estoppel effect of the administrative agency's findings plaintiff should be precluded from relitigating the issue of whether he was entitled to the two weeks' paid leave *in addition to* the two weeks' paid vacation as he claims. If plaintiff is precluded from relitigating this fact issue regarding the terms and conditions of plaintiff's former employment, defendant contends that, as a matter of law, it did not violate plaintiff's statutory rights because section 2024(d) only required that plaintiff be granted a leave of absence to fulfill his ADT obligation.

Plaintiff opposes defendant's motion and cross-moves for summary judgment contending that:

(1) defendant, in unilaterally assigning plaintiff's vacation time to his period of ADT, committed a per se violation of [plaintiff's statutory employment rights];
(2) plaintiff is entitled to receive two weeks vacation pay, Two–Thousand Dollars ($2,000), as damages for defendant's violation of [plaintiff's statutory rights];
(3) plaintiff's exclusive remedy for a violation of [these rights] is to commence an action in federal district court; and (4) plaintiff is not collaterally estopped or otherwise barred from bringing such action because of the Unemployment Insurance Appeal Board's decision of February 4, 1988.

Memorandum in Support of Plaintiff's Cross Motion, at 2.

For the reasons that follow, defendant's motion for summary judgment dismissing the complaint should be granted.

BACKGROUND

Plaintiff commenced working for defendant in September 1977. In 1985, plaintiff was approached to take a permanent full-time job with defendant as a manager. During the latter part of August 1985, plaintiff entered into a verbal employment contract with Mr. Neil A. Rose, acting on behalf of defendant. It is undisputed that plaintiff was to receive a $1,000 per week salary, two weeks' paid vacation, and a two-week leave from work in order to fulfill his obligations with the Army Reserves. What is sharply disputed by the parties is whether plaintiff was entitled to be paid his weekly salary while he was attending ADT. Plaintiff commenced work as a managerial employee on September 2, 1985 and thereafter served his two week ADT from July 14 to July 25, 1986 after having notified defendant in April or May that he would be taking that time off from work. Plaintiff received two weeks' vacation pay for this period. Subsequently, plaintiff went on vacation from August 25 to August 29, 1986 again after having informed defendant. On September 5, 1986, after having requested payment for this vacation period, plaintiff was told by Mr. Rose that he would not be paid for this week's vacation because plaintiff had already been paid for the two weeks' vacation he was entitled to. As a result of a disagreement over plaintiff's entitlement to vacation pay, plaintiff left his employment on September 8.

On September 15, 1986, plaintiff filed an original claim with the New York State Department of Labor and was thereafter ruled eligible to receive unemployment insurance benefits. Administrative review of

this initial decision ensued; ultimately, after two hearings were held at which testimony was taken, the Unemployment Insurance Appeal Board sustained the initial determination finding plaintiff entitled to receive benefits. The Board stated as follows:

> The credible evidence establishes that there was a misunderstanding between the claimant and the employer as to the terms and conditions of the claimant's hire. There was no "meeting of the minds" by the parties as to the terms and conditions of his hire. The result of this misunderstanding is that there was no agreement of hire and the parties are not bound to accept each others terms. Therefore, when the parties were unable to agree on the terms of claimant's employment, [claimant] was free to leave such employment. Accordingly, we conclude that the claimant left his employment with good cause.

February 4, 1988 Decision of the Unemployment Insurance Appeal Board, Notice of Motion, Exhibit D.

This action to remedy alleged violations of plaintiff's rights under 38 U.S.C. sections 2021(b)(3) and 2024(d) ensued.

DISCUSSION

Section 2021(b)(3) provides as follows:

Any person who [is employed by a private employer] shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of an obligation as a member of a Reserve component of the Armed Forces.

Section 2024(d) states in part that:

> Any employee not covered by subsection (c) of this section who [is employed by a private employer] shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training ... in the Armed Forces of the United States. Upon such employee's release from a period of such active duty for training ..., such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such

employee had not been absent for such purposes.

In order to determine whether defendant has violated either of these provisions, the court must first ascertain, contrary to the position advanced by plaintiff at oral argument, whether the February 4, 1988 decision of the New York State Department of Labor is entitled to preclusive effect in this federal court action and, if so, to what extent plaintiff is collaterally estopped.

*A. Collateral Estoppel*

■ When a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *see also DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 116 (2d Cir.1987).

■ There is no dispute, nor can there be any, that plaintiff had an adequate opportunity before the Department of Labor to litigate the issues surrounding his termination of employment with defendant, among which was the issue regarding the parties' dispute over the terms and conditions of plaintiff's hire. Two administrative hearings were held at which testimony was taken; although plaintiff was not represented by counsel at these hearings, plaintiff does not challenge the adequacy of these hearings on that or any other basis. This court, therefore, must accord the February 4th decision of the New York State Department of Labor the same preclusive effect it would be accorded in New York courts, absent some other bar to be addressed by the court shortly.

Well-established New York law instructs that unreviewed quasi-judicial administrative determinations are given preclusive effect under the doctrines of both res judicata and collateral estoppel when rendered

pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunal employing procedures substantially similar to those used in a court of law, *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825–826, 467 N.E.2d 487, 489–90 (1984) and that New York courts give preclusive effect to unreviewed quasi-judicial determinations of the State Department of Labor. *See Bernstein v. Birch Wathen School*, 71 A.D.2d 129, 421 N.Y.S.2d 574 (1st Dep't 1979), *aff'd on opn below*, 51 N.Y.2d 932, 434 N.Y.S.2d 994, 415 N.E.2d 982 (1980); *see also Allied Chemical v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 277, 532 N.Y.S.2d 230, 233, 528 N.E.2d 153, 156 (1988) (citing *Bernstein*); *Staatsburg Water Co. v. Staatsburg Fire District*, 72 N.Y.2d 147, 155, 531 N.Y.S.2d 876, 880, 527 N.E.2d 754, 758 (1988) (citing *Bernstein* with approval). Nevertheless, in order to determine whether to accord preclusive effect to the unreviewed Department of Labor decision in the present case, the court must first ascertain whether the text or legislative history of the pertinent federal statutes protecting employment rights of reservists reveals any congressional intent to render actions commenced pursuant to 38 U.S.C. section 2022 immune from any preclusive effect that might otherwise be accorded unreviewed State administrative determinations.

Plaintiff does not frame the issue in precisely these terms. Rather, plaintiff takes issue with defendant's collateral estoppel defense, arguing that a federal court complaint is the exclusive remedy for challenging an employer's actions under sections 2021 and 2024. Plaintiff states that he

> is not seeking to relitigate his claim for unemployment insurance benefits before this Court; rather, he seeks a determination that he was denied vacation status because of his reserve obligation. His entitlement to unemployment insurance benefits under New York law and vacation benefits under [section 2024(d) ] involve different remedies under different statutes which are not mutually exclusive. The rights granted to a veteran employee under [the sections 2021 and

2024] are subject to exclusive federal jurisdiction. [Citations omitted.] Accordingly, [these provisions] provide[ ] plaintiff with an exclusive federal remedy, separate and distinct from the Unemployment Insurance Appeal Board, and plaintiff is not barred from pursuing his federal claim by the Unemployment Insurance Appeal Board's decision.

Notice of Cross–Motion, at 6–7.

The short answer to plaintiff's argument is, as defendant points out, that defendant does not claim that plaintiff is collaterally estopped by a decision of the Unemployment Insurance Appeal Board from pursuing in federal court his rights under federal statutes protecting veterans' employment rights. Defendant simply claims that findings made by the Board are binding on this court and that the court must apply the applicable law to the established facts on these cross motions for summary judgment. *See* Memorandum in Opposition to Plt's Cross–Motion for Summ Judg, at 1. Second, that rights granted to a veteran employee under federal statutes are subject to exclusive jurisdiction does not necessarily render an action to enforce those rights immune from the application of the traditional doctrines of preclusion. *Cf. University of Tennessee v. Elliott*, 478 U.S. at 791–97, 106 S.Ct. at 3223–3225 (relying in substantial part on *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) and *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) to conclude that text and legislative history of Title VII, 42 U.S.C. sections 2000e, *et seq.*, reveal that Congress did *not* intend unreviewed State administrative proceedings to have preclusive effect on Title VII claims over which federal courts have exclusive jurisdiction). Because plaintiff, or defendant for that matter, does not address the issue as the court has framed it, the court will undertake its own analysis of the matter.

Section 2022 provides as follows:

> If any employer, who is a private employer ..., fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or 2024 of this title, the district

court of the United States for any district in which such private employer maintains a place of business, ... shall have the power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. Any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits provided for in such provisions.... No fees or court costs shall be taxed against any person who may apply for such benefits. In any such action only the employer shall be deemed a necessary party respondent. No State statute of limitations shall apply to any proceedings under this chapter.

38 U.S.C. section 2022 (Supp.1988). Nothing in the text of this provision, or in the texts of sections 2021(b)(3) or 2024(d), even remotely expresses any congressional intent either to supplant State provisions regarding unemployment insurance benefits to which a reservist might be entitled in the event that the reservist's employment with the private employer is terminated or to contravene the common law rules of preclusion that may be attendant to the federal court action in the event that the reservist whose employment has been terminated first seeks benefits provided by State law. Moreover, the legislative history of these provisions does not indicate in any meaningful way whether Congress intended unreviewed State administrative decisions relating to benefits available to reservists upon termination of their employment not to have preclusive effect on actions commenced pursuant to 38 U.S.C. section 2022. This is so notwithstanding the explanation given that the amendments to existing legislation proposed by the Senate in 1974 "make specific and unequivocal the congressional intent that the Federal courts shall be the forum for the determination of reemployment rights of these public employees." Senate Veterans' Affairs Committee, 93d Cong., 2d Sess., Report on

S.2784, 120 Cong.Rec. 20,047 (1974). Interestingly, the Senate recognized that "such actions [have] seldom [been] necessary since more than 98 percent of reemployment claims are satisfactorily settled informally or by conciliation through the assistance of the Office of Veterans, Reemployment Rights, U.S. Department of Labor." *Id.* at 20,046. Congress, therefore, had an opportunity to comment in some way on the potential impact of prior administrative proceedings on subsequent Federal court actions. Similarly, the statement that State statutes of limitations should not be applied so as to ensure as nearly as possible uniform enforcement of veterans' rights, *id.* at 20,047, does not disclose any intent that traditional doctrines of preclusion would not be available to an employer as defenses to a Federal court action.

In sum, nothing in the text or the legislative history of sections 2021, 2022, or 2024 warrants the conclusion that unreviewed quasi-judicial State administrative decisions should not be given preclusive effect in actions commenced under section 2022 notwithstanding the increasing recognition given by various courts to the analogy between Title VII actions and actions to enforce the employment rights of veterans and reservists. *See Kidder v. Eastern Air Lines, Inc.,* 469 F.Supp. 1060, 1064 n. 3 (S.D.Fla.1978) (citing cases). Similarly, the Supreme Court's decision in *McKinney v. Missouri–K.T.R. Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), does not compel a different result. That a veteran, as was the case there, is not obligated to exhaust remedies possibly available under a collective bargaining agreement or before the National Railroad Adjustment Board prior to commencing a suit in federal district court under section 2022 does not reveal any indication that determinations reached by State administrative bodies should not be accorded preclusive effect. *See id.* at 268–270, 78 S.Ct. at 1225–1226.

Giving preclusive effect to the unreviewed quasi-judicial administrative decision of the State Department of Labor would, in view of the foregoing, promote the value underlying collateral estoppel: to

wit, enforcing repose. *See University of Tennessee v. Elliott*, 478 U.S. at 798, 106 S.Ct. at 3226. This value encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources. *See id.*

Having determined that the unreviewed decision of the State Department of Labor may be accorded preclusive effect under both state and federal law does not end the court's inquiry. The court must now ascertain whether the elements of collateral estoppel have been established; this inquiry will entail construing the February 4th decision of the Department of Labor.

The doctrine of collateral estoppel, or issue preclusion, which operates to preclude a party from relitigating in a subsequent action an issue clearly raised in a prior action or proceeding and decided against that party, regardless whether the tribunals or the causes of action are the same, has but two requirements under New York law: the issue with respect to which preclusion is sought must be identical to that necessarily decided in the prior proceeding, and be decisive of the present action, and the party against whom preclusion is sought must have been accorded a full and fair opportunity to contest the issue. *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985); *Ryan v. New York Telephone Co.*, 62 N.Y.2d at 500–501, 478 N.Y.S.2d at 826–827, 467 N.E.2d at 490–91. Central to the parties' dispute in the present case is the first requirement.

Defendant, who bears the burden of establishing the identicality and decisiveness of the issue as the proponent of collateral estoppel, *see id.*, 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491, argues that the facts plaintiff alleges in his complaint—"that the terms of the employment contract with the defendant were that he was entitled to receive a straight salary of $1,000.00 for a 52 week period which would have covered two weeks to attend his Army reserve obligation plus two weeks vacation"—are identical to the facts resolved against plaintiff by the Unemployment Insurance Appeal Board. Memorandum of Law in Support of Deft's Motion for Summ Judg, at 6. Defendant contends that the Board "found that there was no meeting of the minds between the parties, and thus no agreement between the parties on the issue of entitlement to vacation pay and whether the plaintiff would receive a two week paid or unpaid leave of absence for his reserve duty." *Id.* In opposition, plaintiff states that the Board "only said there was 'no meeting of the minds', it did not rule that plaintiff was not entitled to receive two weeks of paid vacation and two weeks paid ADT a year." Notice of Cross–Motion, at 6. For the reasons that follow, the court believes that defendant has sustained its burden with regard to the identicality and decisiveness of the issue that defendant seeks to avoid having relitigated in this forum.

The critical issue in the prior administrative proceeding was whether plaintiff voluntarily left his employment without good cause therefore rendering him not entitled to unemployment benefits. It was undisputed that plaintiff left his employment because of a disagreement over vacation pay he believed himself entitled to on the basis of his understanding of the verbal contract of employment he had entered into with defendant. The parties' key point of dispute, therefore, throughout the administrative proceedings was whether the parties had entered into an agreement of hire containing as a term and condition of plaintiff's employment two weeks' paid leave in addition to two weeks' paid vacation. The Unemployment Insurance Appeal Board in ultimately determining that plaintiff had left his employment with good cause unequivocally found that there had been a misunderstanding between the parties as to the terms and conditions of plaintiff's employment, that there was no meeting of the minds and that, as the result of this misunderstanding, there was no agreement of hire and the parties were not bound to accept each other's terms. Necessarily decided by the Board in finding that there was no agreement of hire because of the parties' misunderstanding was that two weeks' paid leave was not a term and con-

dition of plaintiff's employment to which the employer was bound. Plaintiff cannot have been entitled to two weeks' paid leave if the parties did not agree that this would be a term and condition of plaintiff's employment. The absence of an agreement of hire containing the terms and conditions plaintiff believed himself entitled to was essential to the Board's ultimate decision that plaintiff left his employment with good cause and is decisive of plaintiff's claims in the present action, *see Ryan,* 62 N.Y.2d at 500–503, 478 N.Y.S.2d at 826–828, 467 N.E.2d at 490–92; *see also Kaufman,* 65 N.Y.2d at 456–458, 492 N.Y.S.2d at 589–590, 482 N.E.2d at 68–69. It is decisive of plaintiff's claims because plaintiff predicates his assertions that defendant violated sections 2021(b)(3) and 2024(d) on the existence of a verbal contract formed during the latter part of August 1985 containing as a term and condition of plaintiff's employment plaintiff's entitlement to a straight salary of $1,000 per week for 52 weeks which would include receiving that salary for the two weeks he would be attending his ADT and for the two weeks he would be on vacation. *See* Complaint, para. 5 and 6. Absent an entitlement under the purported verbal contract to be paid for a two weeks' leave to attend ADT plaintiff cannot prevail on his claims that his employment rights as a reservist were violated, notwithstanding the liberal construction, *see Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed. 2d 595 (1977), provisions protecting employment rights of veterans and reservists should be given.

### B. *Violation of Sections 2021(b)(3) and 2024(d)*

Briefly stated, section 2024(d) provides that reservists must be granted a leave of absence for military training and, upon their return, be restored to their position "with such seniority, status, pay, and vacation" as they would have had if they had not been absent for training. Section 2021(b)(3) provides broader protection against discharge and the denial of promotions or other incidents or advantages of employment because of Reserve obli-

gations. *See United States v. New England Teamsters and Trucking Industry Pension,* 737 F.2d 1274, 1278–1279 (2d Cir. 1984). The legislative history of section 2021(b)(3), as noted by the Supreme Court in *Monroe v. Standard Oil Co.,* 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), reveals that the purpose of this section was to prevent reservists and National Guardsmen not on active duty who must attend military training from being discriminated against in employment because of their Reserve membership and to protect such employees from discriminatory treatment by insuring that employers would not penalize or rid themselves of returning reservists after a mere *pro forma* compliance with section 2024(d). *Id.* at 557–562, 101 S.Ct. at 2515–2518. It was not, however, the purpose of section 2021(b)(3), or section 2024(d) for that matter, to grant the reservist special privileges or accommodations. *See id.* at 561–566, 101 S.Ct. at 2517–2519; *see also Rumsey v. New York State Dep't of Correctional Services,* 569 F.Supp. 358, 361 (N.D.N.Y.1983), *judgment vacated in part,* 580 F.Supp. 1052 (N.D.N.Y.1984).

Plaintiff's argument that defendant violated his rights under sections 2021(b)(3) and 2024(d) by unilaterally assigning his vacation time and vacation pay to him during his ADT and by thereafter failing to pay plaintiff for the third week of vacation taken in August 1986, relying on *Hilliard v. New Jersey Army Nat. Guard,* 527 F.Supp. 405 (D.N.J.1981), must fail. Plaintiff is proceeding on the assumption that he was entitled to payment for the two weeks he spent fulfilling his Reserve obligations in addition to two weeks' paid vacation under a verbal contract of employment entered into in August 1985. Issues relating to the agreement of hire and to the terms and conditions of plaintiff's employment have already been decided adversely to plaintiff in the prior State Department of Labor proceeding, which the court believes should be given preclusive effect in the present action. In view of the foregoing, plaintiff's reliance on *Hilliard* is misplaced: defendant did not require plaintiff to forego any vacation to which he would have

been entitled had he not attended ADT. *Id.* at 412. Plaintiff was free to take his vacation; defendant was simply not required to pay plaintiff for vacation in excess of two weeks inasmuch as it has already been determined that this was not a term and condition of plaintiff's employment to which the parties had agreed.

See also, 668 F.Supp. 128.

## CONCLUSION

In conclusion, by virtue of the preclusive effect accorded the February 4, 1988 decision of the Unemployment Insurance Appeal Board, I am of the opinion that defendant did not violate plaintiff's employment rights under sections 2021(b)(3) or 2024(d) as a matter of law. Plaintiff's cross motion for summary judgment, therefore, should be denied and defendant's motion for summary judgment dismissing the complaint should be granted.

IT IS SO ORDERED.