**Marilyn BENJAMIN, Administrator for the Estate of Marc Benjamin, and Gloria Downey, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants,**

v.

**TRAFFIC EXECUTIVE ASSOCIATION EASTERN RAILROADS, Eastern Railroad Association, and Eastern Weighing and Inspection Bureau, Defendants–Appellees.**

No. 389, Docket 88–7674.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1988.

Decided Feb. 21, 1989.

Kenneth A. Wexler, Chicago, Ill. (Michael J. Freed, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., Stanley Nemser, Wolf Popper Ross Wolf & Jones, New York City, of counsel), for plaintiffs-appellants.

G. Paul Moates, Washington, D.C. (Per A. Ramfjord, Sidley & Austin, Washington, D.C., of counsel), for defendants-appellees.

Before WINTER and MINER, Circuit Judges, and MUNSON, District Judge.*

MUNSON, District Judge:

This case presents us with two issues. The first is whether a decision arising from a statutorily imposed arbitration proceeding can be the basis for collateral estoppel in a subsequent federal court proceeding. If that is permissible, then we must decide whether the use of collateral estoppel violates plaintiffs' seventh amendment right to a jury trial.

## BACKGROUND

At stake in the litigation before us are severance benefits. Plaintiffs are former non-union employees of the defendant Eastern Weighing and Inspection Bureau ("EWIB"). The other defendants in this action are the Traffic Executive Association Eastern Railroads ("TEA–ER") and the Eastern Railroad Association ("ERA").

---

* The Honorable Howard G. Munson, United States District Judge for the Northern District of New York, sitting by designation.

The relationship among the three defendants is unclear. On the one hand, plaintiffs state that the TEA–ER operated as part of and for the ERA and that the EWIB fell under the TEA–ER. Defendants, on the other hand, state that the TEA–ER and ERA are parent and sister organizations of the EWIB. However, they do not specify which is the parent and which is the sister.

Plaintiffs lost their jobs when one of the defendants—according to plaintiffs it was the TEA–ER, while defendants identify the ERA—eliminated the EWIB. As a result, plaintiffs started this class action claiming entitlement to benefits under § 219(g) of the Staggers Rail Act of 1980 ("Staggers Act").[1] 49 U.S.C. § 10706 note; Pub.L. No. 96–448, 94 Stat. 1895, 1928. The § 219(g) benefits (also referred to as "New York Dock conditions")[2] would be vastly more remunerative than the severance payments offered the plaintiffs.[3] The complaint contained four counts. Count I was the Staggers Act claim; Counts II through IV alleged fraud, breach of fiduciary duty, and violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

Following commencement of this action, defendants moved to compel arbitration on the Staggers Act claim. The employees agreed to submit that count to binding arbitration on a classwide basis. Both parties set up informal procedural rules to govern the arbitration proceeding. They agreed to presentation of oral or written testimony, to extensive briefing and did, in fact, engage in informal discovery. At the hearing the plaintiffs cross-examined the defendants' witnesses who testified orally, and could have, if they had chosen, called in and cross-examined those witnesses who submitted their testimony on paper. The agreement acknowledged that plaintiffs would not waive their right to have the district court decide Counts II through IV.

The arbitration board ruled two to one that the plaintiffs were not entitled to Staggers Act benefits. To qualify for the Staggers Act entitlement the plaintiffs would have had to be "employees of [a] rate bureau." 49 U.S.C. § 10706 note. Central to the decision, and this appeal, was the arbitration board's express finding that the plaintiffs were not rate bureau employees.

The court below affirmed the arbitrator's decision. 688 F.Supp. 903 (S.D.N.Y.1988).[4] It denied the plaintiffs' motion for a trial *de novo* on Count I. Then the court utilized the doctrine of collateral estoppel to grant summary judgment in favor of the

1. "The Interstate Commerce Commission shall require rail carrier members of a rate bureau to provide the employees of such rate bureau who are affected by the amendments made by this section with fair arrangements no less protective of the interests of such employees than those established pursuant to section 11347 of Title 49, United States Code. For purposes of this subsection, the term 'employees' does not include any individual serving as president, vice-president, secretary, treasurer, comptroller, counsel, member of the board of directors, or any other person performing such functions." 49 U.S.C. § 10706 note.

2. Section 219(g) of the Staggers Act provides arrangements for rate bureau employees "no less protective ... than those established pursuant to section 11347 of Title 49, United States Code...." Section 11347 is the recodification of 49 U.S.C. § 5(2)(f). Prior to the recodification, Congress passed the Railroad Revitalization and Regulatory Reform Act of 1976, § 402(a) of which amended § 5(2)(f). Pub.L. No. 94–210, 90 Stat. 31, 62. Pursuant to that amendment the Interstate Commerce Commis-

sion ("ICC") adopted protective arrangements which were more beneficial to the employees than were the previous protective provisions. That more recent set of labor protective provisions are referred to as the "New York Dock conditions." In *New York Dock Ry. v. United States,* 609 F.2d 83 (2d Cir.1979), this court affirmed the ICC decision which issued those provisions.

3. In return for accepting the severance payment, each employee had to waive all claims against defendants.

4. The district court's scope of review of the arbitration decision was narrow. Plaintiffs could only attack the arbitration decision on the basis of fraud, corruption, exceeding the scope of the arbitrator's jurisdiction, or not complying with the provisions of the Railway Labor Act, which provides the standard of review which courts are to use when reviewing arbitrators' decisions on Staggers Act claims. *See Walsh v. United States,* 723 F.2d 570, 574 (7th Cir.1983). Plaintiffs chose not to challenge the decision along the lines permissible.

defendants on Counts II through IV. The district court held—and neither party disputes—that the only way plaintiffs could prevail on Counts II through IV would be to prove that they were rate bureau employees as defined by the Staggers Act. The court below reasoned that since it endorsed the arbitration decision which determined plaintiffs were not rate bureau employees, it was estopped from deciding whether the plaintiffs' status, for the purposes of Counts II–IV, was that of rate bureau employees.

On appeal, plaintiffs do not challenge the district court's refusal to grant a trial *de novo* on Count I. They do challenge the decision to grant summary judgment in favor of the defendants on Counts II through IV.

## DISCUSSION

I. Collateral estoppel.

■ We must first consider whether collateral estoppel is applicable to the finding made in the arbitration decision. Although they have different positions on when collateral estoppel is applicable, both sides recognize that the findings of arbitration boards can serve as the basis for collateral estoppel in a federal court proceeding.

■ Plaintiffs argue that because the evidentiary standards for the arbitration proceeding were not as strict as they would be under the Federal Rules of Evidence, the issue decided by the arbitration board should not have preclusive effect on the counts to be decided by a federal court. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331 n. 15, 99 S.Ct. 645, 651 n. 15, 58 L.Ed.2d 552 (1979) ("differences in available procedures may sometimes justify not allowing a prior judgment to have estoppel effect in a subsequent action even between the same parties"). We do not agree with plaintiffs' position. The parties' agreement

to arbitrate outlined procedures to be followed. There is no indication that plaintiff sought to include any evidentiary standard or procedure which defendants refused to accept. More importantly, plaintiffs have not shown how the procedures were improper to the extent that the arbitration board could not make a reasoned decision; nor have they shown they were unfairly prejudiced by the procedures used.[5] *See SCAC Transport (USA) Inc. v. S.S. "Danaos",* 845 F.2d 1157, 1163 (2d Cir.1988); *compare Parklane Hosiery Co.,* 439 U.S. at 331 n. 15, 99 S.Ct. at 651 n. 15 ("If, for example, the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted."). In short, plaintiffs had a full and fair opportunity to litigate the issue before the arbitration board. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Found.,* 402 U.S. 313, 328, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971).

The policies behind collateral estoppel counsel for its use in this instance. As the Supreme Court has observed, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). If the district court had not granted defendants' summary judgment motion, it would have left open the possibility for a result where the employees were *not* rate bureau employees under Count I, but *were* rate bureau employees under Counts II through IV. Such a conflict would be confusing and irrecon-

---

**5.** At oral argument counsel for plaintiffs stated that the plaintiffs were prejudiced by the flexible procedures before the arbitration board. Counsel stated that he could not get documents and could not get depositions. Plaintiffs do not point to any place in the record which demonstrates that they ever requested and were denied

documents or depositions. Moreover, under Fed.R.Civ.P. 56(f), plaintiffs could have sought an opportunity for further discovery when the District Court was considering defendants' motion for summary judgment. Plaintiffs do not deny that they did not seek discovery on the summary judgment motion.

cilable. Additionally, given plaintiffs' full and fair opportunity to litigate the issue of whether they were rate bureau employees, we feel that, for reasons of conserving resources and fostering finality, it was proper to apply collateral estoppel to avoid relitigation of the arbitration board's finding. *See Blonder–Tongue Laboratories, Inc.*, 402 U.S. at 328, 91 S.Ct. at 1442. In sum, we conclude that the district court properly applied collateral estoppel when it granted summary judgment for the defendants on Counts II through IV.

Our conclusion is not swayed by our recent decision that arbitration proceedings were not res judicata over a fired employee's action brought under 42 U.S.C. § 1983. *Coppinger v. Metro–North Commuter R.R.*, 861 F.2d 33 (2d Cir.1988). The plaintiff, Ronald Coppinger, was a former employee of Metro–North Commuter Railroad ("Metro–North"). He was fired after urinalysis confirmed the presence of illegal substances in his body. Coppinger sought to have his dismissal vacated and, pursuant to the Railway Labor Act ("RLA"), 45 U.S. C. § 151 *et seq.*, he submitted his case to compulsory and binding arbitration. The arbitration board upheld Coppinger's dismissal.

Subsequently, Coppinger filed a civil rights action in the Southern District of New York under 42 U.S.C. § 1983. In his complaint Coppinger alleged, among other things, that Metro–North infringed on his fourth amendment rights. The district court in that case dismissed his § 1983 claim holding that it lacked jurisdiction because Coppinger's claims fell within the arbitration board's exclusive and primary jurisdiction.

We reversed the district court insofar as it had held that it did not have jurisdiction to hear Coppinger's complaint. As an initial matter, we held that Coppinger had made out a colorable fourth amendment claim. Next, we concluded that the district court did have jurisdiction over the § 1983

claim. Then, with language which might appear to conflict with this opinion, we held that proceedings before the arbitration board were not res judicata over plaintiff's § 1983 claim.[6]

Our primary holding in *Coppinger* was that the district court had jurisdiction over the § 1983 claim. In the case at bar the parties have taken for granted that the district court had jurisdiction over Counts II, III and IV. Thus, in both cases the arbitration proceedings do not deprive the district courts of jurisdiction over related claims in which arbitration was not mandated. *See Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (arbitration of a grievance pursuant to the RLA does not deprive district court of jurisdiction over a related personal injury claim brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*).

Nonetheless, in *Coppinger* we refused to give an arbitration decision preclusive effect and today we grant preclusive effect to an arbitration decision. An explanation for the different results lies in the different nature of the preclusion sought in each case. In *Coppinger* the defendant sought to use the arbitration decision as res judicata. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889–90 n. 6, 72 L.Ed.2d 262 (1982). In contrast, our decision today invokes collateral estoppel. "Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Id.* It follows that, "[a]s compared to claim preclusion, the rules of issue preclusion do not purport to prohibit litigation of matters that never have been argued or decided." 18 C. Wright, A. Miller & E. Cooper, *Federal*

---

6. In *Coppinger* we addressed the res judicata issue because Metro–North argued that the plaintiff "was afforded a full and fair opportunity to raise his Fourth Amendment claims before

the Board and that the district court's jurisdictional ruling [did] not therefore deprive him of due process of law." *Coppinger*, 861 F.2d at 38.

*Practice and Procedure* § 4416, at 136 (1981).

Because of the difference between collateral estoppel and res judicata, invoking collateral estoppel in a given case may be permissible when invoking res judicata is not. Thus, the Seventh Circuit has held in the prisoners' rights context that, while res judicata does not apply to an individual class member's claims brought subsequent to a class action, collateral estoppel does apply. *Crowder v. Lash,* 687 F.2d 996, 1007–11 (7th Cir.1982). Courts will apply collateral estoppel and not res judicata because the values of avoiding embarrassing inconsistencies and avoiding burdening a court and an adversary with repetitious litigation are "served more directly by issue preclusion than by claim preclusion." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4416, at 139 (1981). Therefore, we do not think it at all unusual in one case to grant an arbitral finding collateral estoppel effect, and in another to deny an arbitral decision res judicata effect.

In part the decision arrived at in *Coppinger* stemmed from a hesitancy to permit arbitration to preclude from the district court's consideration matters never argued or decided. *See Coppinger,* 861 F.2d at 36–37. This was one of the considerations which guided the Supreme Court's decision to refuse to grant an arbitration decision preclusive effect over a Title VII claim. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Court reasoned that the statutory right was independent of the contractual right resolved in arbitration. *Id.* at 52, 94 S.Ct. at 1021. To have granted the arbitration decision res judicata effect would have taken a determination regarding one right and improperly allowed that to dictate the determination regarding another right. Likewise, if we had invoked res judicata in *Coppinger,* we would have taken the finding that Coppinger was not improperly discharged and from that concluded that he had not presented any valid constitutional claims. We re-

fused to proceed in that manner and preclude claims never argued or decided. In the case at bar, however, the preclusion extended covers only an issue which the arbitration board decided, namely, that plaintiffs were not rate bureau employees.

Other considerations guided our decision in *Coppinger.* In our assessment the arbitrators there lacked the authority, lacked the competence and failed to provide the protective procedures necessary to fairly adjudicate a § 1983 lawsuit. First, with regard to the arbitrators' authority, under the RLA their primary concerns were contractual, rather than constitutional or statutory, rights. *Coppinger,* 861 F.2d at 38–39; *compare Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361 (11th Cir.1985) (arbitration board properly considered and determined allegations based in state law and contractual rights). Furthermore, the relief they could provide was limited to back pay and reinstatement. *Coppinger,* 861 F.2d at 39. Hence we were unwilling to permit the district court to extend the board's determination to cover, as though raised in the dispute before the board, rights over which the board could not grant relief. In the case at bar the district court did not, in like manner, stretch out of proportion the power of the arbitrators. It granted collateral estoppel effect to a finding which was within the arbitration board's purview.

Second, in *Coppinger* we also questioned the competence of arbitrators to determine legal and factual issues raised under the fourth amendment and under § 1983. In contradistinction, competence of arbitrators is not at issue in the case at bar. Plaintiffs do not question the expertise nor the competence of the arbitrators who determined that plaintiffs are not rate bureau employees.[7]

Third, we perceived in *Coppinger* that arbitral procedures did not protect *constitutional* guarantees as adequately as fed-

---

7. We do not consider whether a party may properly challenge an arbitration board's competence to determine matters over which it pre-

sides pursuant to statutory mandate and not pursuant to contractual agreement.

eral court procedures.[8] We noted that "arbitral fact-finding is not the equivalent of judicial fact-finding." *Coppinger*, 861 F.2d at 39, and cited examples, e.g., lack of jury trial in arbitration, limited judicial review, etc. Nonetheless, we are of the opinion that collateral estoppel is properly applicable in the situation before us.

The issue on which the arbitration board found against plaintiffs was not a constitutional issue. In *Coppinger*, though, we were particularly concerned that "where suits are tried" is important when the "rights sought to be vindicated ... entail the interpretation and application of both the New York and Federal Constitution." *Coppinger*, 861 F.2d at 39. Today we do not grant preclusive effect to an arbitral decision which interpreted and applied constitutional rights; instead we grant preclusive effect to a decision which, pursuant to a Congressional mandate, applied federal statutory law. Moreover, the nature of the issue decided by the arbitration board—whether or not plaintiffs were rate bureau employees—is much more akin to the law of the shop than is the question of whether an individual's fourth amendment right against unreasonable search and seizure has been violated. *Cf. Coppinger*, 861 F.2d at 38 (citing *Alexander*, 415 U.S. at 57, 94 S.Ct. at 1024).

We also believe that the procedures utilized by the arbitration board in the case at bar compare favorably when contrasted with the shortcomings of arbitral procedures listed in *Coppinger*. Even though the parties in this case did not follow the Federal Rules of Evidence or Civil Procedure, they did agree, as indicated above, to the procedures which would be followed in the arbitration proceedings. Moreover, the record nowhere indicates that plaintiffs sought a particular procedure and were

denied it. While cross-examination may be limited in arbitral proceedings, witnesses who testified before the board either orally or on paper could have been cross-examined by the adversarial parties, if the parties had chosen. Contrary to another of the shortcomings catalogued in *Coppinger*, the arbitration decision at issue here was presented in a reasoned, detailed opinion. *See SCAC Transport*, 845 F.2d at 1163. Finally—and we address this in much greater detail later, if we were to carry to its full extent the admonition in *Coppinger* that arbitration proceedings do not carry a right to a jury trial, we would find ourselves in conflict with the Supreme Court's *Parklane* decision which held that a jury trial in a prior proceeding is not a prerequisite to granting the prior proceeding preclusive effect over a subsequent proceeding to which a jury trial right attaches. 439 U.S. at 333–35, 99 S.Ct. at 652–54.

In *Coppinger* we took our cue from the Supreme Court which, on account of the procedures used in arbitration, has been reluctant to grant arbitration findings preclusive effect over certain federal statutory and constitutional rights. *See, e.g., McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (arbitration decision does not have preclusive effect over a § 1983 claim); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (arbitration decision does not have preclusive effect over a Title VII claim). Despite its hesitancy, the Supreme Court expressly has not foreclosed federal courts from granting preclusive effect to arbitration decisions. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). In making our determination we are to "take into account the federal interests warranting protection." *Id.*[9]

---

8. *Cf. Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). "Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" *Id.* at 511, 104 S.Ct. at 1965; *see* Note, *De Novo Judicial Review of Administrative Agency Factual Determi-*

*nations Implicating Constitutional Rights*, 88 Col. L.Rev. 1483 (1988).

9. Of course, an arbitration decision may not be given preclusive effect over a statutory right if Congress intended the right to be immune from preclusion. *Romano v. Thunder Projects, Inc.*, 696 F.Supp. 831, 834 (N.D.N.Y.1988); *Spielmann v. Anchor Motor Freight, Inc.*, 551 F.Supp. 817, 820–21 (S.D.N.Y.1982) (arbitration decision

The Eleventh Circuit has considered those federal interests and has held that arbitration findings may be given collateral estoppel effect over issues in a RICO claim. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir.1985). In *Greenblatt*, contrary to the case at bar, the report of the arbitration board contained no specific factual findings. *See id.* at 1361. Despite this absence, the court inferred from the arbitration decision factual findings upon which decision must have been predicated. With these inferences made, the court did not "think it improper to grant collateral estoppel effect to an arbitration panel's factual findings regarding [the] underlying acts" upon which the RICO claim was based, provided the arbitrators' findings were within their authority and expertise. *Id.* We feel a similar conclusion is appropriate in the case at bar. As noted, underlying each of Counts II through IV is the contention that plaintiffs were rate bureau employees. Since there is no question regarding the arbitrators' authority and since none has been raised regarding their expertise, we likewise do not think it improper to grant collateral estoppel effect to the arbitrators' factual finding on an issue which underlies Counts II through IV.

While we reembrace the holding of the *Coppinger* case, we do not believe that the result reached there should govern every case where a court is asked to grant preclusive effect to an arbitration decision. To permit the *Coppinger* result to dictate the result today would require us to overlook the fundamental distinction which divides res judicata from collateral estoppel.

## II. Seventh Amendment.

■ Plaintiffs attack the use of collateral estoppel, arguing that it impinges on their seventh amendment right to a jury trial.[10] We do not agree. "[P]reclusion may not be defeated simply by showing that there was no right to trial by jury in the first action and that there is a constitutional right to trial by jury in the second action, no matter what anguish that may cause to those who believe in juries." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4465, at 600 (1981). The Supreme Court has recognized that there is no seventh amendment violation when a party loses the chance for a jury trial because the trial court invokes collateral estoppel based on conclusions made in a non-jury, equity proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Furthermore, this court has previously granted preclusive effect to findings made by arbitration boards. *See, e.g., American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 678–79 (2d Cir.1974) (charter agreement provided for arbitration of disputes; arbitrators' finding of liability is binding on the parties and the court); *Ritchie v. Landau*, 475 F.2d 151 (2d Cir. 1973) (arbitration pursuant to an employment contract; collateral estoppel is given to the arbitrators' finding that plaintiff was owed a bonus of $200,000).

But plaintiffs counter that the cases which base collateral estoppel on arbitration proceedings have been cases where the arbitration was contracted for and not mandated by statute. The Staggers Act itself requires that plaintiffs' claim under that Act be subject to compulsory arbitration. *See Walsh v. United States*, 723 F.2d at 574 ("the ICC intended . . . mandatory arbitration"); *New York Dock Ry. v. United States*, 609 F.2d at 87–89. Since plaintiffs did not agree in a contract to arbitrate their Staggers Act claim, they argue that

---

not to be given preclusive effect if, in representing the grievant, a union did not fulfill its statutory duty of fair representation). However, plaintiffs cannot prevail on any such argument. The one statutory claim before this court is the RICO count. The Supreme Court has expressly held that RICO claims are arbitrable. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2343–45, 96 L.Ed.2d 185 (1987). Therefore, we detect no statutory

barrier to granting an arbitral finding preclusive effect over an issue presented in a RICO claim. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir.1985).

**10.** The seventh amendment to the United States Constitution states in pertinent part that "[i]n suits at common law . . . the right of trial by jury shall be preserved."

they did not waive their seventh amendment right to a jury trial, and consequently, that the district court should not have used the arbitration decision as a basis for collateral estoppel.[11]

Despite the fact that plaintiffs did not contractually waive any right to a jury trial on Counts II through IV, seventh amendment strictures do not apply to those counts. As an initial matter, we note that plaintiffs only have a right to jury trial over issues presented in actions having the nature of suits at common law. *See Curtis v. Loether,* 415 U.S. 189, 194–95, 94 S.Ct. 1005, 1008–09, 39 L.Ed.2d 260 (1974); *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 470–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962). In determining whether a jury trial right attaches to their claims, we must consider "the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). While equitable claims escape seventh amendment coverage, Counts II through IV cannot escape the seventh amendment on that basis because they do not present issues equitable in nature. *Cf. Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (shareholder derivative action is subject to seventh amendment strictures). Yet that does not end the inquiry. The court must also consider whether the issue to be tried is part of a "statutory proceeding" which is "not a suit at common law or in the nature of such a suit" or whether it "involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether,* 415

U.S. at 194–95, 94 S.Ct. at 1008–09 (plaintiffs have a jury trial right in an action brought to redress violations of the fair housing provisions of the Civil Rights Act of 1968). If the former description fits the issue to be tried, then no seventh amendment right to trial by jury attaches to that issue. *Id.; NLRB v. Jones and Laughlin Steel Corp.,* 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937) (NLRB's award of backpay in an unfair labor practice proceeding is not subject to seventh amendment strictures).

The issue of whether plaintiffs were rate bureau employees must be determined in a statutory proceeding which is not in the nature of a suit at common law. When Congress created § 219(g) of the Staggers Act, it "create[d] a new cause of action and remedies unknown to the common law" *and* "vest[ed] factfinding in a tribunal other than a jury...." *Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc.,* 725 F.2d 843, 855 (2d Cir.), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984). In *Textile Workers* this court concluded that the initial decision by pension fund trustees of employers' withdrawal liabilities under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") did not violate the seventh amendment. Just as with the MPPAA, Congress in § 219(g) of the Staggers Act designated "the use of a special tribunal," *id.* at 855, in this case an arbitration board. And as with the MPPAA, Congress set up "detailed procedures," when it designated the *New York Dock* conditions

---

**11.** In response to plaintiffs' argument, we note that waiver is not the only ground upon which a party may be deprived of a jury trial in a court action which gives preclusive effect to a finding made in a non-jury proceeding. Waiver was not the basis of the Supreme Court's opinion in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Parklane* the Securities and Exchange Commission sought an injunction against certain officers, directors and shareholders of Parklane Hosiery Co. The district court granted the injunction finding that the proxy material at issue was materially false and misleading. The Supreme Court held that the district court's finding precluded relitigation of the same issue in subsequent litigation. As a result, in a separate shareholder derivative ac-

tion summary judgment against the same defendants was appropriate on those issues.

Nor can we agree with an implication in plaintiffs' argument, namely, that they have not had their day in court on Counts II through IV. Plaintiffs' claims under those counts were ruled against, not in the arbitration proceeding, but by the district court pursuant to a motion for summary judgment. Plaintiffs cannot attack summary judgment decisions as inimicable to the seventh amendment. *Itel Capital Corp. v. Cups Coal Co., Inc.,* 707 F.2d 1253, 1261 (11th Cir.1983) ("where no issue of fact remains, summary judgment decides only questions of law and does not deprive the losing party of its jury trial right").

as applicable to fired rate bureau employees. *See id.* Those conditions include a 90 day advance notice requirement, the requirement of an implementation agreement, a binding arbitration requirement, a six year protective period, and an express allocation of the burden of proof. *See New York Dock Ry. v. United States,* 609 F.2d 83, 94–95 (2d Cir.1979). As a result of the nature of the § 219(g) entitlement, the inquiry of whether plaintiffs are rate bureau employees is "free from the strictures of the Seventh Amendment." *Textile Workers,* 725 F.2d at 855. In other words, the § 219(g) entitlement goes part and parcel with the arbitration proceeding which determines whether or not there is a § 219(g) entitlement.

In sum, plaintiffs only have a right to a jury trial over issues presented in actions having the nature of suits at common law. Since whether they were rate bureau employees is not, within the context of the seventh amendment, such an issue, plaintiffs have no jury trial right on that question. Therefore, plaintiffs are not entitled to attack on seventh amendment grounds the preclusive effect which the district court gave to the arbitration board's finding that plaintiffs were not rate bureau employees. The seventh amendment does not command this court to dilute the Congressional directive found in § 219(g) of the Staggers Act by permitting relitigation as to whether plaintiffs were rate bureau employees.

For the foregoing reasons, the judgment of the district court is affirmed.