Anthony **POTHUL**, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant.

No. 99–CV–0008.

United States District Court,
N.D. New York.

April 14, 2000.

McClung, Peters & Simon, Albany, NY (John W. Scott, of counsel), for Plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear, LLP, Albany, NY (Michael J. Kotin, of counsel), for Defendant.

**MEMORANDUM–DECISION & ORDER**

McAVOY, District Judge.

Defendant Consolidated Rail Corporation ("Conrail") presently moves the Court for partial summary judgment precluding Plaintiff from seeking recovery pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, for future wages and benefits that accrued after his discharge from the company for alleged insubordination. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background and Procedural History**

The issue raised by Defendant's motion is what preclusive effect, if any, should be given to internal administrative proceedings conducted by Defendant pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, over Plaintiff's federal statutory rights under FELA.

On January 4, 1999, Plaintiff commenced the instant action under FELA, 45 U.S.C. § 51 *et seq.*, to recover damages for personal injuries sustained in an accident that occurred while working for Defendant. Specifically, Plaintiff seeks to recover for, *inter alia,* past and future pain and suffer-

ing, medical expenses, and lost wages and benefits. · *See* Compl. at ¶ 7.

On December 10, 1998, the date of Plaintiff's accident, Plaintiff was employed as a conductor at Defendant's Selkirk, New York yard. On that date, Plaintiff suffered injuries to his back and neck while "attempting to throw a switch." Pl. Mem. of Law at 1. As a result of his injuries, Plaintiff was determined to be disabled and was awarded a disability pension from the Railroad Retirement Board. *See id.*

By notice dated December 30, 1998, Plaintiff was notified that he was dismissed based on Defendant's determination that "[Plaintiff's] previous safety record constitutes injury proneness."[1] Affidavit of John Scott, Esq. ("Scott Aff.") at Ex. A (Notice of Discipline dated December 30, 1998). Following an appeal decided on February 9, 1999, Plaintiff's dismissal was determined to be excessive and, accordingly, he was reinstated and the discipline imposed was modified to a thirty day suspension. *See* Affidavit of Anthony Pothul ("Pothul Aff."), at ¶ 5; Scott Aff. at Ex. B (excerpt of Plaintiff's Employee Discipline History Report).

During the period Plaintiff was dismissed and before his appeal was decided, Defendant apparently notified Plaintiff of a medical evaluation scheduled for February 12, 1999, the purpose of which was to determine the nature and extent of Plaintiff's injuries and decide upon an appropriate treatment plan.[2] *See* Affidavit of Michael Kotin, Esq. ("Kotin Aff.") at Ex. C

(February 2, 1999 letter of Jeff Geary); Scott Aff. at ¶ 7. In the February 2, 1999 letter, Defendant informed plaintiff that failure to keep the appointment "may result in disciplinary action." Kotin Aff. at Ex. C.

Following Plaintiff's failure to attend the scheduled medical evaluation, Defendant charged Plaintiff with insubordination and ordered him to attend an investigative hearing on that charge.[3] *See* Kotin Aff. at Ex. C (February 24, 1999 Notice of Investigation). A hearing was ultimately held by Brian Lusty, Hearing Officer, on April 1, 1999. At that hearing was Plaintiff, S.T. Cowles, Plaintiff's union representative, and Jeff Geary, a witness and District Superintendent at Defendant's Selkirk facility. Following the hearing, Plaintiff was dismissed on April 19, 1999 for insubordination. *See* Kotin Aff. at Ex. C. An appeal of that decision followed. In a letter dated December 10, 1999 denying Plaintiff's appeal, Steven Friedman, Director of Labor Relations, determined that:

> [there was] substantial evidence sufficient to establish the [plaintiff] elected to ignore lawful instructions.... [and] refused to cooperate with instructions to report for a medical evaluation to determine the nature and extent of his on-duty injury.... The [plaintiff's] own testimony demonstrates his hostile attitude towards complying with proper orders.

Kotin Aff. at Ex. D.

An appeal of Plaintiff's dismissal is currently pending before the Public Law

---

**1.** A copy of Plaintiff's discipline and injury record indicates that Plaintiff suffered five separate injuries during his twenty-four year tenure with Conrail. *See* Scott Aff. at Ex. B. These injuries apparently occurred in 1979, 1985, 1986, 1992 and 1998 (the injury that is the basis of the current litigation). *See id.*

**2.** It appears that Plaintiff missed his initial medical evaluation because he had a conflicting appointment with his personal physician. *See* Affidavit of Michael Kotin, Esq., Ex. C, at 13 (transcript of investigative hearing dated April 1, 1999). With respect to the medical evaluation scheduled for February 12, 1999, Plaintiff contends that was not compelled to

attend that evaluation because he was notified of that appointment *before* his December 30, 1998 dismissal was reversed on appeal and, therefore, during the period he was not an employee of Conrail.

**3.** In the Notice of Investigation, Plaintiff was formally charged as follows:

> Your insubordination when you failed to follow instructions on letter dated February 2, 1999 and return receipted February 9, 1999 advising you of a scheduled medical exam for you on February 12, 1999 at Access Health.

Kotin Aff. at Ex. C.

Board pursuant to the RLA, 45 U.S.C. § 151 *et seq.*, and the provisions of Plaintiff's collective bargaining agreement.[4] *See* Pl. Mem. of Law at 1; Pl. Stat. of Material Facts, at ¶ 9.

Defendant argues that Plaintiff is not entitled to recover for lost wages and benefits under FELA accruing on and after April 19, 1999, the date he was dismissed for insubordination. Specifically, Defendant reasons that "[i]t would be a miscarriage of justice to allow a man found guilty of insubordination—and consequently dismissed—to seek to recover future lost wages he has no right or opportunity to accrue." Def. Mem. of Law at 2–3. In response, Plaintiff argues that Defendant's unilateral determination to terminate him does not have a preclusive effect on his right to seek damages for his work-related injuries under FELA. Thus, the question before the Court is whether Plaintiff can recover damages for lost wages and benefits under FELA after being discharged by the Defendant for insubordination following an investigative hearing and appeal.

## II. Discussion

In deciding Defendants' motion for summary judgment, the Court will apply the well-settled standards applicable to such motions as set forth in its numerous decisions. *See Dyke v. McCleave*, 79 F.Supp.2d 98, 102–03 (N.D.N.Y.2000); *Frink Am., Inc. v. Champion Road Mach. Ltd.*, 62 F.Supp.2d 679, 681–82 (N.D.N.Y. 1999); *Emma v. Schenectady City Sch. Dist.*, 28 F.Supp.2d 711, 717–18 (N.D.N.Y. 1998), *aff'd*, 199 F.3d 1322 (1999) (Table).

FELA was enacted "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). "Independent of the railroad's obligations under its [collective bargaining agreement], . . . FELA provides railroad workers not only with substantive protection against negligent conduct by the railroad, but also affords an injured worker a remedy suited to his needs, untrammeled by many traditional defenses against tort liability." *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 512 (7th Cir.1993). Accordingly, courts have recognized that FELA is "a broad remedial statute to be construed liberally to effectuate its purpose." *Id.*; *see also Buell*, 480 U.S. at 562, 107 S.Ct. 1410 (citing *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)).

In contrast, the RLA "provides a comprehensive framework for the resolution of labor disputes in the railroad industry." *Buell*, 480 U.S. at 562, 107 S.Ct. 1410 (noting that "the RLA establishes elaborate administrative procedures for the resolution of both major and minor labor disputes.") (footnote omitted). Thus, the RLA framework typically deals with railroad employee disputes arising out of the formation or interpretation of collective bargaining agreements. *See id.* at 562–63; *Coppinger v. Metro–North Commuter R.R.*, 861 F.2d 33, 36 (2d Cir.1988) (quotation omitted).

In the present case, Plaintiff is not attempting to relitigate the issue of his dismissal for insubordination. Indeed, in his Complaint, Plaintiff "does not mention or plead a cause of action for wrongful termination." *Graves v. Burlington Northern and Santa Fe Ry. Co.*, 77 F.Supp.2d 1215, 1217 (E.D.Okla.1999); *see also* Compl. at ¶¶ 4–6. Further, in his Memorandum of Law, Plaintiff states that he commenced the present action under FELA "to recover damages he sustained in an accident that occurred in the course of his employment on December 10, 1998." Pl. Mem. of Law at 1. Plaintiff also states that he seeks

---

4. "A PLB is composed of a labor member, a railroad member, and a neutral member and is essentially an arbitral tribunal that reviews the outcome of a railroad's investigative hearing to ascertain whether the result is consonant with the terms of the [collective bargaining agreement] between the railroad and its union employees." *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 513 (7th Cir.1993).

to recover, *inter alia*, future lost wages and benefits he would have earned with Defendant had he not been injured and become permanently disabled. *See* Pothul Aff. at ¶¶ 2–3; Compl. at ¶¶ 5, 7. In the present action, Plaintiff is not, however, challenging the findings of the investigative hearing or his dismissal from Conrail. *See, e.g., Kulavic*, 1 F.3d at 513 ("[Plaintiff] does not contest the [Public Law Board's] ultimate determination that he was not wrongfully terminated from his position as a ... carman."). Accordingly, "[t]hese arguments and allegations indicate a lawsuit based only on personal injuries, not wrongful termination." *Graves*, 77 F.Supp.2d at 1217. Because Plaintiff brings a claim pursuant to FELA to recover future lost wages and benefits related to his personal injuries rather than his termination, that claim is not barred based on the previous disciplinary hearing conducted by Conrail pursuant to the RLA.

In *Buell*, the Supreme Court addressed this very issue when it considered whether an employee's claim for personal injuries falls under FELA or falls within the purview of the Public Law Board under the RLA:

> The fact that an injury otherwise compensable under ... FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring a[ ] FELA action for damages.... Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong

policies encouraging arbitration, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.... [A]bsent an intolerable conflict between the two statutes, we are unwilling to read the RLA as repealing any part of the FELA.... As far as a worker's right to damages under the FELA is concerned, Congress' enactment of the RLA has had no effect.

480 U.S. at 564–67, 107 S.Ct. 1410 (internal quotation and citation omitted). The Second Circuit reached a similar conclusion in a case where a plaintiff brought a claim pursuant to 42 U.S.C. § 1983 after his dismissal was upheld by the Public Law Board.[5] *See Coppinger*, 861 F.2d at 36–39; *see also Kulavic*, 1 F.3d at 514 (noting that the Supreme Court has held that arbitration does not preclude a plaintiff from bringing subsequent actions pursuant to 42 U.S.C. § 1983, the Fair Labor Standards Act, Title VII, and FELA); *Graves*, 77 F.Supp.2d at 1219 ("This court finds plaintiff's claim for personal injuries due to the negligence of the defendant are not barred by the previous disciplinary hearing conducted pursuant to the Railway Labor Act and the collective bargaining agreement."). Accordingly, the findings of the investigative hearing and subsequent appeal conducted pursuant to the RLA "[do] not deprive the district court of jurisdiction to hear an employee's claim against his employer for personal injuries arising under ... FELA."[6] *Coppinger*, 861 F.2d at 37 (citing *Buell*, 480 U.S. at 562–67, 107 S.Ct.

---

**5.** It is worth noting that, unlike the scenarios in *Kulavic* and *Coppinger*, here, Plaintiff's appeal has not yet been decided by the Public Law Board. *See Kulavic*, 1 F.3d at 511; *Coppinger*, 861 F.2d at 34. Thus, arguably the issue of Plaintiff's dismissal, which is the basis of Defendant's argument that Plaintiff is precluded from seeking recovery under FELA for lost wages and benefits accruing after his dismissal, is not yet final or binding on the parties. *See Kulavic*, 1 F.3d at 513 ("The RLA merely states that awards of the PLB 'shall be final and binding upon both parties to the dispute.' ") (quoting 45 U.S.C. § 153

First (m) and 153 Second). Accordingly, Defendant concedes that its motion for summary judgment "may be unripe for judicial consideration at this time." Def. Reply Mem. of Law at 3 n. 4.

**6.** In holding that the arbitral determination should not be res judicata with respect to plaintiff's federal court action, the *Coppinger* court noted that procedures and remedies available in the arbitral forum were inadequate as a means of addressing plaintiff's constitutional claim under section 1983. *See Coppinger*, 861 F.2d at 38–39.

1410); *see also Kulavic*, 1 F.3d at 513 ("[T]here is no indication in the RLA that ... FELA rights were in any way diluted by the enactment of the RLA.").

Defendant appears to argue that the Second Circuit's decision in *Benjamin v. Traffic Executive Ass'n Eastern Railroads*, 869 F.2d 107 (2d Cir.1989) dictates a different result than that reached in *Coppinger*. *See* Def. Reply Mem. of Law at 7. In *Benjamin*, the Second Circuit, while "reembrac[ing] the holding of the *Coppinger* case," *Benjamin*, 869 F.2d at 114, determined that preclusive effect should be given to an arbitral decision (one apparently not made before a Public Law Board) that plaintiffs were not rate bureau employees under the Staggers Act on claims brought under RICO and for fraud and breach of fiduciary duty. *See id.* at 110–12. Distinguishing between the doctrines of res judicata and collateral estoppel, the *Benjamin* court noted that it was not granting preclusive effect to an arbitral decision that interpreted or applied constitutional or federal rights; rather, it granted preclusive effect to a specific issue, i.e., whether plaintiffs were rate bureau employees, underlying plaintiff's claims. *See id.* at 113.

In the present case, Plaintiff is not relitigating the issue of his dismissal for insubordination, which was the subject of the investigative hearing conducted by Defendant. Instead, Plaintiff is litigating a very different issue; namely, whether he is entitled to recover for future wages and benefits under FELA for work-related personal injuries. *See Kulavic*, 1 F.3d at 519 ("Focusing on the inadequacy of the arbitral procedures, when juxtaposed against the important statutory rights embodied in the FELA, we believe that the situations in *Coppinger* and this case are analogous."); *Graves*, 77 F.Supp.2d at 1219. Accordingly, the Court finds that the holding in *Benjamin* is distinguishable from the instant case and, therefore, not controlling.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**